IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| DEMARCUS ST. CLOUD, STEVEN BUTLER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>Plaintiff,<br><br>vs.<br><br>ESTES EXPRESS LINES, INC.<br><br>Defendants. | Case No:<br><br>JURY DEMAND |

## COMPLAINT

Come now the Plaintiffs, DEMARCUS ST. CLOUD and STEVEN BUTLER (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, and for cause of action state as follows:

## NATURE OF SUIT

1. This action is brought under the Fair Labor Standards Act of 1938, 29 U.S.C. §§201 et seq. (hereinafter the "Fair Labor Standards Act" or "FLSA").

2. The FLSA was passed by Congress in 1938 in an attempt to eliminate low wages and long hours and to correct conditions that were detrimental to the health and well-being of workers. To achieve its humanitarian goals, the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate not less than one and one half times the regular rate at which he is employed." *Walling v. Helmerich & Payne*, 323 U.S. 37, 40 (1944) (discussing the requirements of 29 U.S.C. § 207 (a)).

3. Defendant violated the FLSA by failing to pay Plaintiffs the required rates at time

and one-half their regular rate of pay for all hours worked within a workweek in excess of forty (40) hours.

4. Plaintiffs seek payment for unpaid overtime work and liquidated damages, on behalf of themselves and all those similarly situated, that they were deprived of due to Defendant's violations of the FLSA.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b), and the claim raises a federal question pursuant to 28 U.S.C. § 1331.

6. Venue is proper in this court pursuant to 28 U.S.C. § 1391 because Defendant operates in this district, Plaintiffs worked in this district for Defendant, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

7. Plaintiffs, Demarcus St. Cloud and Steven Butler (collectively "Plaintiffs"), are former employees of Estes Express Lines Inc.

8. Plaintiff Demarcus St. Cloud is a current employee of Defendant Estes Express Lines, Inc. (hereinafter "Estes").

9. Plaintiff Steven Butler is a former employee of Defendant Estes Express Lines, Inc.

10. Plaintiffs are employees within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

11. Defendant Estes was an employer within the meaning of 29 U.S.C. § 203(d) of the FLSA.

12. Defendant comprised an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(r)(1) of the FLSA.

13. Defendant has done in excess of $500,000.00 in annual dollar volume of business

in each of the past three years as required in 29 U.S.C § 203(s)(1) of the FLSA.

14. Plaintiffs and those similarly situated were engaged in interstate commerce, the production of goods for interstate commerce, or an activity which is closely related and directly essential to the production of such goods in each workweek of their employ with Defendant.

## **FACTUAL ALLEGATIONS**

15. Estes Express Lines is a company that provides full-service regional, national, and international LTL freight shipping transportation.

16. On February 2, 2014, Plaintiff Demarcus St. Cloud began working for Estes Express Lines as a dock worker.

17. As a dock worker, Plaintiff Demarcus St. Cloud would perform job duties including but not limited to transferring cargo to the dock safely and efficiently, handling the unloading set-up, and occasional cargo inspection.

18. Defendant would pay dock workers their straight hourly rate up to fifty-five (55) hours and would pay overtime rate at time and one-half for every hour after fifty-five (55) hours.

19. On February 2, 2015, Plaintiff St. Cloud began working for Estes Express Lines as a yard jockey.

20. As a yard jockey, Plaintiff Demarcus St. Cloud's main duty was to operate a small vehicle to move and organize the unloaded dock cargo for storage or future shipment on the Defendant's property[1].

21. Defendant would pay yard jockey workers their straight hourly rate up to forty (40) hours until they would pay overtime rate at time and one-half.

---

[1] In other litigation, the Sixth Circuit defined "yard jockey" as "among other things, a yard jockey is required to back trucks up to the docks and set them up for delivery." *Wylie v. Arnold Transp. Servs., Inc.*, 494 F. Supp. 2d 717, 719 (S.D. Ohio 2006)

22. On or about December 2019, Plaintiff Butler began working for Estes as a dock worker.

23. On March 1, 2020, Plaintiff Butler began working for Estes as a yard jockey.

24. The tractors that Plaintiffs operated did not possess a license plate necessary for travel on public roads and interstates.

25. The tractors that Plaintiffs operated could not reach a speed high enough for travel on public roads and interstates.

26. In fact, the optimal speed for these tractors was between ten (10) and twenty (20) miles per hour.

27. The vehicles that Plaintiffs operated weighed less than 10,000 pounds.

28. If any cargo was designated for future shipment, Plaintiffs were not informed on their end destination.

29. Rather, Plaintiffs were informed only on where to pick up the cargo unloaded from the docks and where to move that cargo in the yard.

30. Other Estes workers used their discretion to assign where the yard jockeys should place the cargo according to where it was intended to be shipped.

31. Specifically, Plaintiff's job duties included the operation of a terminal tractor to help move semi-trailers within a cargo yard or warehouse environment.

32. Throughout their employment as yard jockeys, Plaintiffs began to notice that their paychecks reflected a minimal time worked as a dock worker.

33. Since Plaintiffs were not actually working the dock, they were surprised to see that this was on their paycheck and affecting their overtime rate.

34. On August 11, 2020, Plaintiff Demarcus St. Cloud had a conversation with Horace

Boston, the Regional Human Resources Manager, about his overtime pay.

35. When talking with Mr. Boston, Plaintiff St. Cloud was informed that all people just working yard jockey duty should be paid overtime after forty (40) hours.

36. Plaintiff St. Cloud then asked, "if they make it mandatory us to work the dock, that knocks us out of that?"

37. Mr. Boston responded, "yes if you work the dock going that 40 hours then you are going to a "freight handler" which is a different overtime rule."

38. Plaintiff St. Cloud circled back, "even if it's only for ten (10) minutes?"

39. Mr. Boston affirmed Plaintiff St. Cloud's response.

40. Mr. Boston then added "this is not a policy event it's more of an overtime event."

41. Subsequently, Mr. Boston stated that "it's not in writing, but it's a system in place."

42. Plaintiff St. Cloud then informed Mr. Boston that the company had been manually inputting them as "dock work" although they never actually did any dock work.

43. Mr. Boston responded, "so now they are making you manually go on the dock? They should have been doing the whole time."

44. Subsequently, Plaintiff inquired, "does that mean that I physically have to be on the dock?"

45. Mr. Boston responded, "yes if you are stationed to the dock you need to be on the dock."

46. Plaintiff added that he "previously asked why he had dock time on his checks when he hadn't worked the dock."

47. Mr. Boston stated that his inquiry was a "good question" and that "because he brought it up to someone" it most likely began the current system that if "they are put on the dock

to offset overtime that they need to work the dock."

48. However, Plaintiffs frequently were told to "clock in" but were not physically needed on the dock and did not perform any dock labor afterward.

49. Mr. Boston attempted to justify this time in dock work, stating that "there wasn't always enough time for jockey work for eight (8) hours a day."

50. However, Plaintiffs frequently worked between forty-five (45) and fifty-five (55) or more hours a week with only an hour or less or dock work and the rest being yard jockey work.

51. Plaintiff St. Cloud then stated that this overtime policy was "manipulative."

52. Mr. Boston agreed, stating "it is" and that "from their point of view (Defendant Estes) it's mostly a cost thing."

53. Mr. Boston offered a hypothetical for Plaintiff. St Cloud, suggesting if there was "a company with one-hundred (100) Nashville's" and that yard jockeys were getting paid "10-15 hours a week overtime" that someone would eventually "ask questions on how to reduce this cost."

54. Mr. Boston emphasized that cutting this overtime specifically for yard jockeys would save the company "close to a million dollars a week."

55. At the onset of their employment, Plaintiffs were expected to work at least forty (40) hours a week as a yard jockey.

56. Plaintiffs often exceeded these standard hours required by Defendant, working between forty-five (45) to fifty-five (55) hours a week as a yard jockey.

57. Defendant willfully failed to comply with the maximum hour provisions of the FLSA, 29 U.S.C. § 207, by failing to pay Plaintiffs one and one-half (1.5) times their standard hourly rates for all hours worked in excess of forty (40) hours.

58. Throughout their employment with Defendant, Plaintiffs were "non-exempt" employees under the FLSA.

59. Defendant knew the FLSA was applicable to their employment practices yet still failed to pay proper overtime wages to Plaintiffs.

60. Accordingly, Defendant's pattern or practice of failing to pay Plaintiffs in accordance with the FLSA was in willful violation of the FLSA.

61. Moreover, Defendant did not act in good faith or have reasonable grounds for believing the FLSA was not applicable.

## COLLECTIVE ACTION ALLEGATIONS

62. Plaintiffs have actual knowledge that similarly situated employees in other states have been paid in the same manner or scheme as set out above.

63. Throughout the last three years, Defendant has suffered, permitted, and/or required class members to work in excess of forty hours per week and failed to pay these employees one and one-half times their regular rate of pay.

64. Throughout the last three years, putative class members performed the same or similar work as did Plaintiffs on behalf of the Defendant.

65. Throughout the last three years, putative class members' work was controlled in the same manner and to the same degree by the Defendant as set out above.

66. As such, the putative class members are similar to Plaintiffs in terms of job duties, conditions of employment, and pay structure.

67. The putative class members are similar to Plaintiffs in that they were not paid overtime in violation of the FLSA.

68. Defendant's failure to pay overtime compensation to putative class members

resulted from a single decision, policy, practice or plan, and does not depend on the personal circumstances of the Plaintiffs or individual class members.

69. The Plaintiffs' experiences while employed as laborers for Defendant are typical of the experiences of putative class members while they were employed as laborers for Defendant.

70. The specific job titles or precise job titles of each class member do not prevent collective action treatment because their actual job duties and conditions of employment were similar.

71. All class members are entitled to overtime compensation under the FLSA for hours worked in excess of forty during a workweek throughout the last three years while working for Defendant.

72. As such, the class of similarly situated Plaintiffs is properly defined as follows:

**All present and former yard jockeys employed by Estes Express Lines that have worked more than forty hours in a workweek on or after June 10, 2018.**

**COUNT I – VIOLATIONS OF THE FAIR LABOR STANDARDS ACT**

73. Plaintiffs hereby re-allege the foregoing paragraphs as though fully set forth herein.

74. Plaintiffs were entitled to the FLSA's protections.

75. Defendant is an employer covered by the FLSA.

76. Defendant willfully failed to compensate Plaintiffs at a rate of one and one-half times the Plaintiff's regular hourly rate for all hours worked in excess of forty (40) hours for Defendant.

77. Defendant, by such failure, willfully violated the overtime provisions of 29 U.S.C. § 207 of the FLSA.

**WHEREFORE**, Plaintiff requests this court enter judgment in favor of the Plaintiffs and against Defendant, for:

**(1)** All amounts of wages, including overtime, that Plaintiffs should have received under the FLSA but for Defendant's willful violation of their rights, plus an equal amount in liquidated damages pursuant to the FLSA, 29 U.S.C. § 216(b);

**(2)** All reasonable costs, interest and attorney's fees pursuant to the FLSA, 29 U.S.C. § 216(b);

**(3)** Any such other legal relief as may be appropriate or to which they may be entitled under federal law.

Respectfully Submitted,

THE EMPLOYMENT AND CONSUMER LAW GROUP,

**/s/ Jonathan Street**
**Jonathan A. Street BPR No. 021712**
**Cullen D. Hamelin BPR No. 037317**
1720 West End Ave., STE 402,
Nashville, TN 37203
(615) 850-0632
*Attorneys for Plaintiff*