IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DEMARCUS ST. CLOUD, STEVEN BUTLER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:21-cv-00456 Judge Aleta A. Trauger |
| ESTES EXPRESS LINES, INC., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM**

Before the court is the Motion for Conditional Class Certification and Court-Authorized

Notice ("Motion for Notice") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

(Doc. No. 22.) In support of this motion, the plaintiffs have submitted a Memorandum of Law,

three Declarations, a proposed notice, and the transcript of a telephone conversation. (Doc. Nos.

22-1through 22-7.) The defendant opposes the motion (Response, Doc. No. 23), and the plaintiffs

have filed a Reply (Doc. No. 26.) For the reasons set forth herein, the motion will be denied.

**I.      FACTS AND PROCEDURAL BACKGROUND**

On June 10, 2021, plaintiffs Demarcus St. Cloud and Steven Butler filed a Complaint on

behalf of themselves and other "similarly situated" current and former employees of defendant

Estes Express Lines[1] ("Estes"). The Complaint sets forth a single claim for violation of the FLSA's

---

[1] Although identified in the case caption as Estes Express Lines, Inc., the defendant
represents in its Answer and elsewhere that its correct name is Estes Express Lines. (*See, e.g.*, Doc.
No. 9 at 1 n.1.)

overtime pay provision, 29 U.S.C. § 207(a)(1).

Estes is a company that provides "freight shipping transportation." (Doc. No. 1 ¶ 15.) It is a Virginia corporation whose principal place of business, executive offices, and headquarters are in Richmond, Virginia. (Doc. No. 23-1, Hughes Decl. ¶ 2.) Tracy Hughes, Estes's Vice President of Compliance, Benefits and Spend Management, attests that Estes is a motor carrier, "specifically a less-than-truckload freight transportation company, that transports freight across state lines in interstate commerce using its tractor-trailers that weigh over 10,001 pounds." (*Id.* ¶ 5.) "Less-than-truckload carriers transport freight for multiple shippers on a single trailer." (*Id.*) Estes operates terminals in multiple states in the eastern United States, including, as relevant here, in Nashville, Tennessee.

Demarcus St. Cloud began working for Estes in February 2014 as a "dock worker." (Doc. No. 22-3, St. Cloud Decl. ¶ 3.) He began working for Estes as a "yard jockey" in February 2015. (*Id.* ¶ 6.) He is still employed by Estes. (Doc. No. 1 ¶ 8.) Steven Butler began working for Estes as a dock worker in December 2019 and became a yard jockey on March 1, 2020. (Doc. No. 1 ¶ 23–23; Doc. No. 22-4, Butler Decl. ¶ 3.) His employment with Estes ended on April 14, 2021. (Hughes Decl. ¶ 11.) Kenneth Davis, who is not a named plaintiff but has filed his written consent to become a plaintiff (Doc. No. 27-1),[2] began his employment with Estes as a dock worker in 2007 and began working as a yard jockey a few years later. (Doc. No. 22-5, Davis Decl. ¶¶ 3, 6.) He is still employed by Estes as a jockey. (Hughes Decl. ¶ 12.) All three individuals worked exclusively at Estes's Nashville, Tennessee terminal. (*Id.*) None of them purports to have had any contact with Estes employees working at other terminals. Tracy Hughes affirmatively avers that "Jockeys are

---

[2] "Once they file a written consent, opt-in plaintiffs enjoy party status as if they had initiated the action." *Canaday v. Anthem Cos.*, 9 F.4th 392, 394 (6th Cir. 2021), *cert. denied*, No. 21-1098, 2022 WL 1914113 (June 6, 2022).

assigned to one terminal. They do not travel between terminals. They do not travel between states to perform their work[, and n]o jockey who is employed at a terminal outside of Tennessee has any relevant contact with Tennessee or any of Estes' few terminals, managers, or jockey operations in Tennessee." (*Id.* ¶ 7.)

St. Cloud, Butler, and Davis all attest that, as dock workers, their job duties included, but were not limited to, "transferring cargo to the dock safely and efficiently, handling the unloading set-up, and occasional cargo inspection." (*See, e.g.*, St. Cloud Decl. ¶ 4.) As dock workers, they were paid a normal hourly rate and overtime pay at 1.5 times their normal rate except any hours worked in excess of fifty-five hours per week. (*Id.* ¶ 5.) The plaintiffs implicitly acknowledge that dock workers are considered freight handlers and, as such, subject to the so-called "Motor Carrier Act exemption" to § 207, set forth in 29 U.S.C. § 213(b)(1), meaning that they are subject to a different overtime pay rule.

As yard jockeys, however, the plaintiffs' primary duty was to "operate a small vehicle to move and organize already unloaded dock cargo" on the defendant's property "for storage or future shipment." (*Id.* ¶ 7.) The small vehicle did not have a license plate and was operated exclusively on Estes's property in a "warehouse environment." (*Id.* ¶¶ 10, 11, 15.) The plaintiffs allege that yard jockeys are not classified as freight handlers, are not subject to the Motor Carrier Act exemption, and are entitled to overtime pay for any hours worked in excess of forty in a workweek. (Doc. No. 1 ¶ 21; *see also* Doc. No. 22-7, Audio Recording of St. Cloud conversation with H. Boston ("Audio Tr.") 2, 11.) The plaintiffs attest that they were occasionally required to "work minimal dock work" outside their normal yard jockey duties, typically less than one hour per week. (Doc. No. 22-3 ¶¶ 16, 17.) They were informed several times by management that they "would not actually be required to perform the job duties of a dock worker, or any job duties for that time

period, as long as [they] clocked in for that position." (*Id.* ¶ 18.) The plaintiffs argue that the defendant's policy was that, if they worked as dock workers for any period of time during a workweek, no matter how minimal, then they would be classified as dock workers rather than as yard jockeys and, as a result, would not be entitled to overtime pay unless they worked more than fifty-five hours in a workweek.

Plaintiffs St. Cloud and Davis also attest that they routinely worked in excess of forty hours per week while employed as yard jockeys but were not paid overtime unless they worked in excess of fifty-five hours per week, based on the application of that policy, even if they worked one hour or less on "dock work." (*See id.* ¶ 20; Doc. No. 1 ¶ 50.) All three declarants state, "[b]ased on [their] personal observations and conversations," that Estes employed other yard jockeys who had similar job duties, were similarly subjected to a requirement that they perform some minimal amount of dock work, and that they too routinely worked in excess of forty hours per week but were not compensated at an overtime rate except for hours in excess of fifty-five in a week. (*See, e.g.*, Doc. No. 22-3 ¶¶ 21–23.)

St. Cloud also presents evidence regarding a telephone conversation he had with Estes's Regional Human Resource Supervisor, Horace Boston, who confirmed that individuals employed as yard jockeys should receive overtime compensation for any time worked in excess of forty hours per workweek. (*Id.* ¶ 24.) However, Boston allegedly also told him that the company's position was that any "dock work" on a yard jockey's paycheck would "knock [them] out" of receiving overtime pay after forty hours and would mean, instead, that they were classified as dock workers and not eligible for overtime pay except for hours worked in excess of fifty-five per workweek. (*Id.* ¶ 25.) According to the plaintiff, Boston confirmed that this was the case even if a yard jockey was on dock work "only for ten minutes." (*Id.* ¶ 26.) According to the plaintiffs, Boston agreed

with St. Cloud's comment that this was "manipulative" on the part of Estes; Boston stated that Estes saved "substantial amounts of money each week" by engaging in this practice. (*Id.* ¶¶ 27–28.)

In fact, Boston explained that the practice was intended to "deter" overtime. (Audio Tr. 6.) He also confirmed that, if workers are "put . . . on the dock to offset the overtime, they need to work the dock." (*Id.* at 9.) When St. Cloud told him that, on some shifts, yard jockeys were being assigned to "clock in on the dock" to work briefly as a dock worker but then "come back out on the yard," without being entitled to overtime pay, Boston responded: "If they're doing that, that's not right. The whole purpose of it is . . . not to cheat the system. It's to beat the system." (*Id.* at 17.)

The plaintiffs filed their Complaint claiming that they were, throughout their employment, non-exempt employees under the FLSA and that Estes willfully failed to comply with the FLSA's overtime provision, 29 U.S.C. § 207(a)(1), by failing to pay the plaintiffs 1.5 times their standard pay for all hours worked in excess of forty hours. (Doc. No. 1 ¶ 57.) The Complaint alleges that the plaintiffs' experiences were "typical" of those of other similarly situated employees and that similarly situated employees worked in excess of forty hours during a workweek during the last three years and are entitled to overtime pay. (*Id.* ¶¶ 69, 71.) The named plaintiffs seek to bring suit on behalf of other similarly situated employees, including "[a]ll present and former yard jockeys employed by Estes Express Lines that have worked more than forty hours in a workweek on or after June 10, 2018." (*Id.* ¶ 72.)

Following service of the Complaint upon the defendant and the filing of the defendant's Answer, the court conducted an initial case management conference and then entered the Initial Case Management Order ("ICMO") jointly submitted by the parties. The ICMO identified as

issues that remained to be resolved (in addition to the disputes regarding liability and damages) (1) "whether Plaintiffs are similarly situated to and are suitable representatives for the class they seek to represent"; (2) "whether a two stage procedure involving conditional certification is appropriate for this case, and, if the Court decides [that it is], whether the Court should conditionally certify this case and authorize notice to potential class members pursuant to 29U.S.C. §216(b)"; and (3) "whether personal jurisdiction will exist over Defendant for claims by anyone who attempts to opt in from outside Tennessee." (Doc. No. 21, at 3.)

Based upon the parties' agreement, the ICMO provided for expedited discovery on certification issues and a briefing schedule for the plaintiffs to file, and the defendants to respond to, a motion for conditional certification of a collective action under the FLSA. (*Id.* at 4.) Neither party has indicated that it needed additional discovery, or additional time to complete discovery, on the certification issues, and briefing on the plaintiffs' Motion for Notice has now been completed.

## II.    LEGAL STANDARD

The FLSA permits employees alleging a violation of the statute to sue on their own behalf as well as on behalf of other "similarly situated" employees. The statute reads, in pertinent part:

> Any employer who violates the provisions of . . . section 207 of this title shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages. . . . An action to recover [for such] liability . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). This provision establishes two requirements for a representative action: (1) plaintiffs must "actually be 'similarly situated'"; and (2) they must "signal in writing their

affirmative consent to participate in the action." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).

While the FLSA does not define "similarly situated," the Sixth Circuit has held that plaintiffs are similarly situated if they "suffer from a single, FLSA-violating policy" or if their "claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 398 (6th Cir. 2017) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016)). The plaintiff bears the burden of establishing that the members of the putative class are similarly situated. *Comer*, 454 F.3d at 546.

Although the Sixth Circuit has never expressly mandated or approved this procedure,[3] it has recognized that the district courts "typically bifurcate certification of FLSA collective action cases," *Monroe*, 860 F.3d at 397, into a "two-phase inquiry," *Comer*, 454 F.3d at 546, as first developed in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 352 (D.N.J. 1987). The first stage, the "notice stage," "takes place at the beginning of discovery." *Comer*, 454 F.3d at 546. At this stage, the court determines whether conditional certification of a collective is appropriate and whether notice of the suit should be distributed to other employees who may be similarly situated. *Burris v. Charter Foods, Inc.*, No. 2:20-CV-00158-CEA, 2022 WL 1260270, at *2 (E.D. Tenn. Mar. 23, 2022), *report and recommendation adopted*, No. 2:20-CV-158, 2022 WL 1250748 (E.D. Tenn. Apr. 27, 2022). To satisfy their burden of proof at this stage, the plaintiffs must show that their

---

[3] *See Holder v. A&L Home Care & Training Ctr., LLC*, 552 F. Supp. 3d 731, 741 (S.D. Ohio 2021) ("Our circuit, it is true, does not appear to have expressly adopted *Lusardi*, although the circuit has acknowledged that district courts use the bifurcated certification framework.").

"position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546–47 (citation omitted). The district courts applying this standard have characterized it as "fairly lenient," requiring only a "modest factual showing" that the named plaintiffs and potential co-plaintiffs are "similarly situated with respect to the conduct alleged in the complaint." *Manlove v. Volkswagen Aktiengesellschaft*, No. 1:18-cv-145, 2019 WL 7755928, at \*6 (E.D. Tenn. June 11, 2019), at \*6.[4] The district courts have repeatedly stated that they do not "decide substantive issues going to the merits of the case" at the notice stage. *See Burris*, 2022 WL 1260270, at \*2 (citing *Manlove*, 2019 WL 7755928, at \*6 (collecting cases)). This lenient standard "typically results in conditional certification of a representative class" at the first stage of the class certification process. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (quoting *Comer*, 454 F.3d at 546). However, "[a]t the notice stage, the certification is conditional and by no means final." *Comer*, 454 F.3d at 546.

---

[4] The Eastern District of Tennessee in *Manlove* cites the Sixth Circuit's opinion in *Comer*, 454 F.3d at 547, in support of that proposition, but it bears pointing out that, in that portion of *Comer*, the Sixth Circuit was simply summarizing the district court's decision:

> Judge Enslen quoted the *Pritchard* court's conclusion that authorization of notice "need only be based on a modest factual showing," *Pritchard* [*v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002)], as well as the *Morisky* court's view that "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class,'" *Morisky* [*v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)] (quoting *Thiessen v. General Elec. Capital Corp.*, 996 F. Supp. 1071, 1080 (D. Kan. 1998)).

*Comer*, 454 F.3d at 547. The Sixth Circuit neither approved nor disapproved that determination. It held instead that it lacked jurisdiction to consider the defendant's appeal of the grant of conditional certification, because the district court "clearly characterized . . . as conditional" its approval of the plaintiffs' motion, to permit them to provide notice to potential plaintiffs of their rights under the FLSA and to furnish potential plaintiffs an opportunity to opt into the lawsuit under § 216(b). *Id.* at 547, 548.

The second stage, arising only in the event conditional certification has been granted, allows a defendant to file a motion to decertify the class in the event discovery reveals the individualized nature of the claims presented. *Creely*, 789 F.Supp.2d at 823.

Courts that have permitted the parties to conduct some, but not all, discovery prior to the plaintiffs' motion for conditional certification have sometimes applied an intermediate standard in reviewing the motion at the first stage. *See, e.g.*, *Davis v. Colonial Freight Sys., Inc.*, No. 3:16-cv-674, 2018 WL 11225871, at *3 (E.D. Tenn. March 3, 2018) (citing *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 823 (N.D. Ohio 2011)); *see also Bowman v. Crossmark, Inc.*, No. 3:09-cv-16, 2010 WL 2835719, at *4–5 (E.D. Tenn. July 19, 2010) (holding that, where substantial discovery had been completed, the case is not in the typical "notice stage," and application of the lenient standard employed at the notice stage is not appropriate). "After some amount of discovery, the conditional certification goes 'beyond the stage one evidentiary boundaries of the complaint's allegations and supporting affidavits.'" *Davis*, No. 3:16-cv-674, 2018 WL 11225871, at *3 (citing *Creely*, 789 F. Supp. 2d at 826).

Under this intermediate review standard, the plaintiff is required to make a "modest 'plus'" factual showing. *Id.* Specifically, the court determines whether the plaintiff's factual showing would "tend to make it more likely that a class of similarly situated employees exists by comparing the plaintiff's allegations in [the] complaint with the factual record assembled." *Id.* (internal quotation marks omitted). However, as the factual record has not been fully developed, courts typically do not consider the merits of a plaintiff's claims under this standard and, instead, resolve any gaps or doubts in the evidence in favor of the plaintiffs, "in light of the equitable goals and policies embodied in the FLSA." *Creely*, 789 F. Supp. 2d at 826; *see also Davis*, No. 3:16-cv-674, 2018 WL 11225871, at *3.

In applying this standard, "to judge if Plaintiffs have made a sufficient modest 'plus' factual showing, and to prevent the absurd result of granting the parties time to do discovery on the conditional certification question but subsequently imposing no incremental hurdle in determining whether Plaintiffs may send opt-in notices," the Northern District of Ohio, in *Creely*, determined that it was appropriate to compare the factual allegations in the Complaint with the "factual record assembled through discovery" to determine whether the plaintiffs had shown that it was "more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs." *Creely*, 789 F. Supp. 2d at 827. This is a reasonable approach.

## III.    DISCUSSION

The plaintiffs seek the court's authorization to provide notice of this lawsuit to all "current and former yard jockeys, or employees who were responsible for operating a small vehicle to move cargo exclusively within Defendant's property in a warehouse environment, employed by Defendant in the last three years" prior to the filing of the Complaint. (Doc. No. 22, at 1.) The plaintiffs further request that the court (1) conditionally authorize this case to proceed as a collective action under 29 U.S.C. § 216(b); (2) require the defendant to provide the last known contact information for each putative potential plaintiff; (3) authorize plaintiffs' counsel to notify all such present and former employees of this lawsuit and their right to opt in by a variety of methods, and to provide a reminder notice 60 days later; and (4) provide prospective opt-in plaintiffs 120 days to submit their consent forms to plaintiff's counsel. (*Id.* at 2.)

In support of their motion, the plaintiffs posit, based on the allegations in the Complaint and their Declarations (which largely mirror those in the Complaint), that they have satisfied their burden of showing the existence of similarly situated employees who, like them, were deprived of overtime pay in violation of the FLSA. In particular, the plaintiffs point to their assertions that they were aware, based on "personal observations and conversations," of other employees who worked

as yard jockeys; had job duties substantially similar to those of the declarants; were required to perform minimal "dock work," "sometimes only to clock in"; did not receive proper overtime compensation for all hours worked in excess of forty hours per workweek and, instead, were only paid an overtime rate after working in excess of fifty-five hours per workweek; and were paid in the same manner as the declarants. (Doc. No. 22-1, at 4–5.)

The plaintiffs argue that this evidence is sufficient to satisfy the requirement that they make a "modest factual showing" of the existence of similarly situated potential employees and that this is an appropriate case for court-authorized notice. They also request that the opt-in notices be deemed "filed" on the date they are postmarked and that the court toll the statute of limitations as of the date their motion is granted, "so prospective class members will not have their statute of limitations run while the Consent Forms are being sent to them in the mail." (*Id.* at 14.)

In its Response, the defendant argues that:

(1) the Sixth Circuit Court of Appeals recently granted a defendant's motion for an interlocutory appeal to address "what standard to apply when conditionally certifying a collective action," *In re: A&L Home Care and Training Center, LLC*, No. 21-0305, Order, at 1 (6th Cir. Feb. 4, 2022), and this court should defer ruling on the plaintiffs' motion in this case until the Sixth Circuit resolves that appeal;

(2) alternatively, if it does not wait for a Sixth Circuit ruling, the court should apply the standard adopted by the Fifth Circuit in *Swales v. KLLM Transport Services, LLC*, 985 F.3d 430 (5th Cir. 2021), and, under *Swales*, the court should consider the merits of the plaintiffs' claim and rule as a matter of law that the plaintiffs are subject to the Motor Carrier Act exemption to the FLSA overtime pay provision and, therefore, should not be permitted to pursue a collective action;

(3) under *Canaday v. Anthem Companies*, 9 F.4th 392 (6th Cir. 2021), *cert. denied*, No. 21-1098, 2022 WL 1914113 (June 6, 2022), the court should deny the plaintiffs' motion insofar as they seek authorization to provide notice of the lawsuit and an opportunity to opt in for any putative plaintiffs outside Tennessee, as this court would lack jurisdiction over the defendant with respect to claims made by any individuals employed by the defendant outside Tennessee;

(4) the court should apply the "modest 'plus'" standard, in light of the plaintiffs' having been permitted to conduct discovery related to conditional certification, and, under that standard, must conclude that the plaintiffs have failed to show that they

are similarly situated to any individuals outside the Nashville terminal or even within the Nashville terminal or that Estes maintains a company-wide policy or practice applicable to jockeys that is contrary to law; and

(5) if the court authorizes notice to putative plaintiffs, notices should not be deemed filed on the date they are postmarked, and it is not appropriate to decide tolling questions at this phase of the litigation.

The court finds, first, that deferring a ruling on the plaintiffs' motion is unwarranted and would unduly delay the progression of this case. Moreover, regardless of how the Sixth Circuit rules in the appeal pending in *A&L Home Care*, its holding will have no bearing on this case, because (1) the plaintiffs cannot establish the court's jurisdiction over potential plaintiffs outside Tennessee; and (2) the plaintiffs have not established that they are entitled to pursue this case as a collective action under the "modest 'plus'" standard or the even more lenient "modest proof" standard, described above.

## A. Jurisdiction Over Potential Plaintiffs Outside Tennessee

The plaintiffs make no attempt even to respond to Estes's argument regarding the effect of *Canaday* on their request to extend notice of, and opportunity to opt into, this lawsuit to employees at Estes facilities nationwide. The defendant, however, is clearly correct.

In *Canaday*, the Sixth Circuit affirmed the district court's dismissal, for lack of personal jurisdiction, of claims brought by out-of-state opt-in plaintiffs in an FLSA collective action. *Canaday*, 9 F.4th at 394. The court made it clear that "employees may file a nationwide collective action under the FLSA so long as they do so in a forum that may exercise general jurisdiction over the employer—namely its principal place of business or its place of incorporation." *Id.* at 400–01. In this case, Virginia would be that state. The plaintiffs provide no basis for the exercise of personal jurisdiction over Estes in *this* court with respect to potential claims by employees working for Estes outside of Tennessee.

This determination necessarily limits the plaintiffs to notice, at most, to employees at Estes facilities within Tennessee. The court will deny for lack of personal jurisdiction the plaintiffs' request to provide notice of, or an opportunity to opt into, the lawsuit to any Estes employees outside Tennessee.

**B.     Plaintiffs' Showing of Substantial Similarity to Jockeys Outside Nashville**

The plaintiffs, further, have made no showing of substantial similarity to any Estes employees outside the Nashville facility at which the two named plaintiffs and one opt-in plaintiff work or worked.

While declarations generally may be sufficient to establish the similarity requirement at the conditional stage, *Holder v. A&L Home Care & Training Ctr., LLC*, 552 F. Supp. 3d 731, 739 (S.D. Ohio 2021), such declarations must, at a minimum, allege facts to support an inference that the declarant has "*actual knowledge* about other employees' job duties, pay structures, hours worked, and whether they were paid for overtime hours." *O'Neal v. Emery Fed. Credit Union*, No. 1:13-CV-22, 2013 WL 4013167, at *8 (S.D. Ohio Aug. 6, 2013) (emphasis in original). In this case, the three Declarations submitted by the plaintiffs do not even purport to reflect the plaintiffs' actual knowledge of the working conditions of any employees outside the Nashville facility. The court, therefore, denies the plaintiffs' request to provide notice of, or an opportunity to opt into, this lawsuit to any employees outside Estes's Nashville facility.

**C.     The Showing of Substantial Similarity with Jockeys at the Nashville Facility**

As discussed above, when some discovery has been conducted on the issue of conditional certification, it is not uncommon for courts to follow the standard outlined in *Creely v. HCR ManorCare* to determine whether conditional certification is appropriate. That standard—the so-called "modest 'plus'" or intermediate standard—asks whether, at a minimum, the plaintiffs have assembled some facts "beyond their original allegations that would tend to make it more likely

that a class of similarly situated employees exists." *Creely*, 789 F. Supp. 2d at 826, 827. In light of the fact that the ICMO in this case directed the parties to "complete discovery on the certification issues raised," specifically including discovery that would allow the court to "make a fact-based determination of whether there are any common issues or similarly situated employees that would warrant collective treatment" (Doc. No. 21, at 2–3), before filing the Motion for Notice, the court finds that application of this intermediate standard is appropriate in this case. The parties have never notified the court of any discovery-related disputes arising in the course of conducting that discovery; nor have the plaintiffs complained that they needed additional time to conduct additional discovery.

In applying the *Creely* standard, the court compares the allegations in the Complaint with the "factual record assembled through discovery." *Creely*, 789 F. Supp. 2d at 827. This case was brought by two named plaintiffs, St. Cloud and Butler, both of whom filed their consents to become party plaintiffs with the Complaint and both of whom submitted Declarations in support of the Motion for Notice. The plaintiffs submitted the Declaration of a third potential plaintiff, Kenneth Davis, with the Motion for Notice. All three Declarations are basically identical, except that St. Cloud's Declaration includes facts related to his telephone call with Horace Boston, and Butler's fails to allege that he regularly worked more than forty hours per workweek. Critically, none of the Declarations contains any information that is not already included in the Complaint. (*Compare* Doc. Nos. 22-3, 22-4, 22-5 *with* Doc. No. 1.) Aside from the undated transcript of the telephone call between Boston and St. Cloud, which was also referenced in the Complaint, the plaintiffs have not introduced *any* additional evidence in support of their claim. Just last week, on June 15, 2022, the plaintiffs filed Kenneth Davis's Consent Form, in which he consents in writing to become a plaintiff. (Doc. Nos. 27, 27-1.) In the intervening year since the plaintiffs initiated this lawsuit,

they have not filed any additional Consent Forms for any other similarly situated individuals—employed at Estes's Nashville facility or elsewhere—seeking to participate in this lawsuit.

Under these circumstances, the court finds that the plaintiffs have failed to satisfy their burden of showing the existence of any similarly situated employees. As the *Creely* court described the plaintiffs' burden in that case, the plaintiffs "need not have moved the ball far down the field, but they need to have shown some progress as a result of the discovery as measured against the original allegations and defenses." *Creely*, 789 F. Supp. 2d at 827. The plaintiffs here have not made any such progress.

Moreover, even considered on their face and under the more lenient "modest" evidentiary standard typically applied to a Motion for Notice, the plaintiffs' averments that they have knowledge based on "personal observations and conversations" of the existence of similarly situated employees are insufficient. As set forth above, "to warrant a finding that similarly situated employees exist, a plaintiff's declaration must at least allege facts sufficient to support an inference that she has actual knowledge about other employees' job duties, pay structures, hours worked, and whether they were paid for overtime hours." *O'Neal*, 2013 WL 4013167, at *8. The Declarations presented here do not allege any such facts.

In 1989, the Supreme Court "confirm[ed] the existence of the trial court's discretion" to facilitate notice to potential plaintiffs but did not provide "the details of its exercise." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Since then, the Court has provided "no further guidance regarding the notice-giving process." *Swales*, 985 F.3d at 436. However, as *Swales* points out, the only two mandates embraced by the FLSA and the Supreme Court are (1) that "only those 'similarly situated' may proceed as a collective" and (2) that, "while a district court may 'facilitat[e] notice to potential plaintiffs' for case-management purposes, it cannot signal approval

of the merits or otherwise stir up litigation." *Id.* (quoting *Hoffmann-La Roche*, 493 U.S. at 169). The plaintiffs here have failed to satisfy the first mandate. They make broad allegations in the Complaint, parroted in their Declarations, about the existence of similarly situated employees, but, despite putatively having conducted discovery on this issue, they do not identify any of these employees or suggest how they know that other employees were denied overtime pay for work in excess of forty hours per workweek.

The court finds, in sum, applying either a lenient "modest" showing standard or the "modest 'plus'" standard, that the plaintiffs have failed to adduce sufficient evidence of the existence of a collective of similarly situated potential plaintiffs employed as yard jockeys at Estes's Nashville facility, to whom notice of this lawsuit would be warranted.

## IV. CONCLUSION

For the reasons set forth herein, the court will deny the plaintiffs' Motion for Notice. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge